UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GLOBAL PAYROLL INVESTORS LLC f/k/a
EXPATICORE SERVICES LLC & DAVID
LEBOFF,

                              Plaintiffs,                  **REPORT AND**
                                                       **RECOMMENDATION**
           -against-                            CV 20-4508 (JS) (AYS)

IMMEDIS, INC.,

                              Defendant.
-----------------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

       Before the Court, on referral from the Honorable Joanna Seybert for Report and Recommendation, is Defendant's motion to dismiss Count Three of Plaintiffs' Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted. Plaintiffs oppose the motion. For the reasons set forth below, this Court respectfully recommends that Defendant's motion be denied.

BACKGROUND

       The facts set forth below are those alleged in Plaintiff's Complaint, which are accepted as true for the purposes of this motion.

       This is a diversity breach of contract action that arises out of a Purchase Agreement, Promissory Note and an Employment Agreement, all dated May 17, 2017 (the "Agreements"), entered into by Plaintiffs, Global Payroll Investors LLC ("GPI") and David Leboff ("Leboff) (collectively, "Plaintiffs"), and Defendant Immedis, Inc. ("Immedis" or "Defendant"). (Compl. ¶ 2.) Plaintiffs allege that Defendant breached portions of the Agreements, resulting in damages suffered by Plaintiffs in excess of $1,576,000.00. (Id.)

1

GPI is a domestic limited liability corporation with its principal place of business located in Nassau County, New York. (Id. ¶ 3.) Immedis is a foreign corporation, incorporated in Delaware, with its principal place of business located in Iselin, New Jersey. (Id. ¶ 5.) Leboff is the majority owner and Managing Member of GPI. (Id. ¶ 9.) There are four Members of GPI. (Id.)

GPI's business includes providing domestic and international payroll services, payroll tax funds management, and international human resources consulting services. (Id. ¶ 10.) On May 1, 2017, GPI entered into a transaction with Immedis wherein it sold substantially all of its assets to Immedis pursuant to an Asset Purchase Agreement and a Promissory Note. (Id. ¶ 11.) By that same agreement, Immedis assumed certain of GPI's liabilities. (Id. ¶ 16.)

Per the Asset Purchase Agreement, GPI was to receive the following:

    a.    $200,000.00 at closing (subject to adjustment for a portion of GPI's liabilities pursuant to an estimated balance sheet at time of closing);

    b.    An additional $300,000.00 fixed payment ("Fixed Payment") eighteen (18) months from closing (subject to adjustment for a portion of GPI's liabilities per the final GPI closing balance sheet); and

    c.    two annual "earn out" ("Earn Out") amounts payable to GPI, which were tied to the post-closing "Net Revenue" (as defined in the Purchase Agreement) of GPI.

(Id. ¶ 17.)

With respect to Earn Out, if Immedis's Net Revenue was between $1,750,000.00 and $2,250,000.00, the "First Year Earn Out Amount" was to be calculated as follows: "(i) $1,000,000.00 minus (ii) 2 multiplied by the difference of $2,250,000.00 minus the actual Net Revenue in the First Year [i.e., from May 1, 2017 through April 30, 2018]." (Id. ¶ 18.) Net Revenue was defined in the Asset Purchase Agreement as "the gross revenue from the U.S. Clients accrued in accordance with the Accounting Principles . . .

less the fees incurred in accordance with the Accounting Principles by Buyer to any subcontractor or independent contractor engaged by Seller to provide any part of the services for which seller is engaged to provide its clients." (Id. ¶ 19.) Accordingly, to properly determine Net Revenue, Immedis was required to disclose and properly calculate its gross revenue, subcontractor fees, and currency related transaction fees. (Id. ¶ 20.)

Immedis made the required $200,0000.00 payment at closing. (Id. ¶ 21.) With respect to the Fixed Payment, the parties agreed that, after the balance sheet adjustment, Immedis owed GPI $267,533.96. (Id. ¶ 22.) However, on November 1, 2018, Immedis paid only $195,458.10 toward the Fixed Payment, leaving a shortfall of $72,075.86. (Id. ¶ 23.) With respect to the First Year Earn Out, on or about June 27, 2018, Immedis paid GPI only $186,772.54, when the total amount due was $1,000,000.00, leaving a shortfall of $813,277.50. (Id. ¶ 24.)

Despite a demand therefor, Immedis has refused to provide GPI with the books and records showing precisely how gross revenue, subcontractor or independent contractor fees, or fees for currency related transactions were calculated. (Id. ¶ 25.) On June 29, 2018, GPI wrote to Immedis to, among other things, advise Immedis that the payment made with respect to First Year Earn Out was less than was owed under the Purchase Agreement. (Id. ¶ 27.) GPI alleges that Immedis took actions to artificially lower the Net Revenue numbers. (Id. ¶ 32.)

Contemporaneous with the sale of GPI's assets, Immedis entered into a three-year Employment Agreement with Leboff, also dated May 1, 2017. Section 4 of the Employment

Agreement provided that Leboff be paid: (1) a certain salary for the three year term; (2) benefits; (3) an annual "Net Revenue Bonus;" and, (4) a "Long Term Incentive Bonus." (Id. ¶¶ 33, 35.)

Following year one, Immedis calculated annual Net Revenue in such a way that it reduced Leboff's salary in years two and three by $40,000.00 per year. (Id. ¶ 37.) With respect to the annual Net Revenue Bonus, Leboff received a total of $44,491.60, which represented a payment of 2018/2109 only and no payment for 2017/2018 or 2019/2020. (Id. ¶ 38.) Finally, with respect to the Long Term Incentive Bonus, Leboff received a total of $256,760.90. (Id. ¶ 39.) The foregoing totals were far below the amount Leboff expected to receive based upon the limited financial disclosures made by Immedis. (Id. ¶ 40.)

GPI commenced the within diversity action on September 23, 2020, alleging causes of action for breach of contract, unjust enrichment, and breach of the covenant of good faith and fair dealing. (Docket Entry ("DE") [1].) Immedis answered the Complaint on October 20, 2020. (DE [7].) Thereafter, Immedis sought leave to move to partially dismiss the Complaint – specifically, with respect to Count Three only – which Judge Seybert granted on December 9, 2020. (DE [14].) Immedis filed their motion on January 11, 2021, (DE [15]), and Judge Seybert referred the motion to this Court on May 5, 2021. (Elec. Order of Seybert, J. dated May 5, 2021.)

## DISCUSSION

I. <u>Legal Standard</u>

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "Facial plausibility" is achieved when "the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable of the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  As a general rule, the court is required to accept all of the factual allegations in the complaint as true and to draw all reasonable inferences in the plaintiff's favor.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Town of Babylon v. Fed. Hous. Fin. Agency, 699 F.3d 221, 227 (2d Cir. 2012).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." Iqbal, 556 U.S. at 678-79 (citation omitted); see also Twombly, 555 U.S. at 555 (stating that a court is "not bound to accept as true a legal conclusion couched as a factual allegation").  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which state a claim for relief.  Iqbal, 556 U.S. at 679.  A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice.  Iqbal, 556 U.S. at 678 (quoting Twombly, 555 U.S. at 557).

II.     Breach of the Implied Covenant of Good Faith and Fair Dealing

"For all contracts, New York law imposes an implied covenant of good faith and fair dealing such that a party may be in breach of the duty even when it has abided by the express terms of the contract. " In Touch Concepts, Inc. v. Cellco Partnership, 949 F. Supp. 2d 447, 466 (S.D.N.Y. 2013) (citing Fishoff v. Coty Inc., 634 F.3d 647, 653 (2d Cir. 2011)) (additonal citation omitted).  "The 'implied covenant [of good faith and fair dealing] embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive fruits of the contract.'"  In Touch Concepts, 949 F. Supp. 2d at 466 (quoting 511 W. 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153 (2002)).  "Where the contract contemplates the exercise of discretion, this pledge includes a promise not

5

to act arbitrarily or irrationally in exercising that discretion." Dalton v. Educ. Testing Serv., 87 N.Y.2d 384, 389 (1995).

The duties of good faith and fair dealing cannot imply obligations that "would be inconsistent with other terms of the contractual relationship." Dalton, 87 N.Y.2d at 389 (quoting Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 304 (1983). Rather, the duties encompass "any promises which a reasonable person in the position of the promise would be justified in understanding were included." Dalton, 87 N.Y.2d at 389 (quoting Rowe v. Great Atl. & Pac. Tea Co., 46 N.Y.2d 62, 69 (1978)). "However, '[a] cause of action for breach of the implied duty of good faith and fair dealing cannot be maintained where the alleged breach is intrinsically tied to the damages allegedly resulting from a breach of the contract." Emmet & Co., Inc. v. Catholic Health East, 16 N.Y.S.3d 154, 167 (N.Y. Sup. Ct. 2015) (quoting The Hawthorne Group, LLC v. RRE Ventures, 776 N.Y.S.2d 273 (1st Dep't 2004)) (additional citation omitted). Where the alleged breach of the duty of good faith and fair dealing is "merely a breach of the underlying contract," courts have properly dismissed the claim as "duplicative" of the claim for breach of contract. Harris v. Provident Life & Acc. Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002) (citations omitted).

III.     Defendant's Motion to Dismiss Should be Denied

Immedis argues that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing should be dismissed as duplicative of their breach of contract claim because both claims rely on the same allegations and claim the same damages. (Def. Mem. of Law in Supp. of Mot. 3.) In response, Plaintiffs assert that their claim should be permitted to proceed because the underlying allegations are not "intrinsically tied" to the contract claim and do not allege a violation of any express provision of the parties' contract. (Pl. Mem. of Law in Opp'n 6.)

6

The Court agrees with Plaintiffs.  As Plaintiffs set forth in their memorandum of law in opposition to the within motion, their breach of contract claim is based upon allegations that Immedis: (1) failed to make proper Earn Out payments; (2) failed to properly pay Leboff his salary and bonuses; and, (3) failed to provide contractually mandated financial information so Plaintiffs could properly calculate what they allege they are owed.  (Compl. ¶¶ 20, 25-43.)  With respect to their claim for breach of the implied covenant of good faith and fair dealing, Plaintiffs allege that Immedis "shifted income, altered expenses and shifted its customer relationships" to artificially lower its Net Revenue.  (Id. ¶ 75.)  Plaintiffs further allege that "there was a uniform method for client relationships, allocation of expenses and calculation of expenses," which Immedis changed unilaterally, without notice to Plaintiffs, to avoid paying Plaintiffs amounts due under the Agreements.  (Id. ¶¶ 76-77.)  Plaintiffs substantiate these allegations with additional facts, as set forth in their memorandum of law and the Complaint.  (Pl. Mem. of Law in Opp'n 7; Compl. ¶¶ 49, 60, 65.)

The Court finds that Plaintiffs have adequately stated a claim for breach of the implied covenant of good faith and fair dealing, separate and apart from their breach of contract claim.  While the claims are obviously related, they are indeed distinct claims.  However, evidence adduced during discovery could change this finding.  Accordingly, this Court respectfully recommends that Defendant's motion to dismiss Count Three of the Complaint be denied, but that Defendant be permitted to renew its arguments on a motion for summary judgment at the proper time.

## RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that Defendant's motion to partially dismiss Plaintiff's Complaint be denied in its entirety.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

**SO ORDERED:**

Dated: Central Islip, New York
      July 13, 2021

    /s/    Anne. Y. Shields
ANNE Y. SHIELDS
United States Magistrate Judge